J-S72018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.C., A MINOR : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| : | |
| : | |
| : | |
| APPEAL OF: A.C., MOTHER : | |
| : | |
| : | |
| : | |
| : | |
| : | No. 1294 MDA 2018 |

Appeal from the Order Entered July 9, 2018
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000278-2017

| | |
|---|---|
| IN THE INTEREST OF: L.C., A MINOR : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| : | |
| : | |
| APPEAL OF: A.C., MOTHER : | |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | No. 1295 MDA 2018 |

Appeal from the Order Entered July 9, 2018
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000279-2017

| | |
|---|---|
| IN THE INTEREST OF: J.C., A MINOR : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| : | |
| : | |
| APPEAL OF: A.C., MOTHER : | |
| : | |
| : | |
| : | |
| : | |
| : | |
| : | No. 1296 MDA 2018 |

Appeal from the Order Entered July 9, 2018
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000280-2017

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

J-S72018-18

MEMORANDUM BY SHOGAN, J.:          **FILED: DECEMBER 31, 2018**

In these consolidated dependency cases, Appellant, A.C. ("Mother"),

appeals from orders entered on July 9, 2018, that changed prior permanency

review orders from "reunification" to "adoption with a concurrent goal of

reunification" with respect to Mother's three children, A.C., a son born in July

of 2012, L.C., a son born in February of 2014, and J.C., a daughter born in

January of 2016 (collectively "the children").[1]  After careful review, we affirm.[2]

The trial court summarized the history of these cases as follows:

> The family involved in this appeal has been involved with
> the York County Children Youth & Family agency (hereinafter
> "CYF" or the "Agency") since September 30, 2016, when the
> Agency received a referral citing concerns regarding Mother's
> mental health and possible medical neglect.  [A.C., L.C., and J.C.]
> are six, four[,] and two, respectively.    Following their
> investigation, CYF accepted the case for services on November 28,
> 201[6].  At the time, the family resided in a house provided by a
> local church.    However, on March 23, 2017, Mother was
> involuntarily expelled from the house.  The family then began to
> stay with Mother's friends or in hotels.  CYF attempted to arrange
> for and provide services to Mother, but Mother failed to participate
> or comply with service providers.  The children were twice placed
> in foster care via the Safe Families Program, which provides
> temporary foster homes on a voluntary basis.  On August 9, 2017,
> Mother disclosed to CYF that she had a history of drug abuse.
>
> On August 15, [2017], it was reported that the Safe Families
> foster father had spanked the two boys, which is against program

_____

[1] We point out that one child, A.C., has the same initials as Mother.  In our discussion, A.C. refers to the minor child.

[2] E.C. ("Father") participated in the proceedings at the trial-court level. However, Father has not filed a separate appeal in this matter, and he is not a party to the instant appeal.

- 2 -

policy. As a result, the children would have to be removed from the home. When CYF attempted to contact Mother, she informed the Agency that she was in New Jersey. Because Mother's leaving the state had violated their policy, Safe Families would not place the children in another one of its foster homes[.] On August 16, 2017, an Application for Emergency Protective Custody was filed, and temporary legal and physical custody of the children were awarded to CYF. A Shelter Care Hearing was held on August 21, [2017], but continued to August 28, [2017], due to Mother's request for counsel. Counsel was obtained, and the Shelter Care Hearing was attempted. However, Father, unable to attend due to incarceration, and participating by telephone requested a continuance in order to obtain counsel. The Shelter Care Hearing was rescheduled for September 18, 2017. On September 18, 2017[,] a combined Shelter Care/Adjudicatory hearing was held. The children were adjudicated dependent and it was determined that it was not in the best interest of the children to be returned to Mother. The children were placed in [foster care].

Over the course of the next eleven months, Status Review, Permanency Review and Dispositional Review proceedings were held at appropriate intervals. Throughout that time period, Mother's progress varied from moderate to minimal. ... The most recent hearing was held on July 9, 2018. Following the hearing, a Permanency Review Order was entered, changing the primary goal from reunification to adoption, with a concurrent goal of reunification.

Trial Court Opinion, 8/22/18, at 2-3.

On August 3, 2018, Mother filed a separate appeal at each of the trial court docket numbers. Both the trial court and Mother complied with Pa.R.A.P. 1925. On August 21, 2018, Mother filed an application to consolidate the three appeals pursuant to Pa.R.A.P. 513. This Court granted Mother's motion and consolidated the appeals on August 22, 2018.

On appeal, Mother raises the following issues:

I. Whether the lower court erred by changing the primary goal from reunification with a parent or guardian to adoption based on

the court's failure to provide adequate notice that a change of goal was being considered and that the permanency review hearing was also a change of goal hearing.

II. Whether the lower court erred by changing the goal from reunification to adoption as clear and convincing evidence was not presented to support the change of goal.

Mother's Brief at 4 (full capitalization omitted).

Prior to addressing the issues Mother raises in her appeal, we note that at the outset of the dependency proceedings, Katherine Doucette, Esquire, was appointed *guardian ad litem* ("GAL") for the children, and she represented the children's best interests. Pursuant to 23 Pa.C.S. § 2313(a), trial courts are required to appoint counsel to represent the legal interests of children in contested involuntary termination proceedings. *In re Adoption of L.B.M.*, 161 A.3d 172, 179-180 (Pa. 2017). Additionally, "during contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-[GAL] representing the child's best interests can also represent the child's legal interests." *In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018). Our Supreme Court explained that if a child's preferred outcome is not ascertainable, there can be no conflict between the child's legal interests and best interests, and therefore, 23 Pa.C.S. § 2313(a) is satisfied where the court appoints only an attorney-GAL who represents the child's best interests. *Id.* at 1092-1093.

Recently, this Court extended the requirements of *L.B.M.* to dependency actions. *See In re J'K.M.*, 191 A.3d 907, 916 (Pa. Super. 2018)

(reversing an order denying appointment of a separate counsel for dependency proceedings where there was a conflict between the child's best interests and legal interests). In the case at bar, at the time of the July 9, 2018 permanency review orders, A.C. was six years old, L.C. was four, and J.C. was two, and the trial court noted that the children's individual preferences "**have been ascertained to the fullest extent possible and communicated to the court by the** [**GAL**]." Order, 7/9/18 (emphasis added). Neither the trial court nor the GAL has stated that the children's best interests and legal interests are in conflict. Accordingly, at this juncture, we conclude it is unnecessary to direct the trial court to appoint separate legal counsel. Nevertheless, in future proceedings, if the trial court determines that there is a conflict between any child's preferred outcome and his or her best interests, that child must have separate legal counsel to advance his or her legal and best interests. ***Interest of Q.R.***, ____ A.3d ____, 2018 PA Super 309 (Pa. Super. 2018).

In dependency matters, we review goal-change decisions for an abuse of discretion. ***In Interest of R.W.***, 169 A.3d 129, 134 (Pa. Super. 2017).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial

court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

*Id.* (quoting *In re R.M.G.*, 997 A.2d 339, 345 (Pa. Super. 2010) (citation omitted)).

Mother first avers that the trial court failed to provide her with adequate notice that a placement-goal change was possible at the permanency review hearing. Mother's Brief at 16. We disagree.

This Court has held that "there is no statutory requirement that a juvenile court must provide express notice that it is contemplating a goal change." *In Interest of L.T.*, 158 A.3d 1266, 1278 (Pa. Super. 2017). Moreover, "a review of the current goal's feasibility is a required component of every permanency review hearing." *Id.* In the case at bar, the May 1, 2018 status-review order informed Mother that a goal change was possible. Mother now avers that she did not receive "formal notice" of the permanency-review hearing. Mother's Brief at 18. However, Mother attended the July 9, 2018 permanency-review hearing, and she was represented by counsel at that hearing. Moreover, at the very beginning of the hearing, counsel for CYF announced that the hearing was a "permanency review hearing for [the] three minor children." N.T. 7/9/18, at 2. Mother's counsel did not object to the permanency-review hearing or ask for a continuance, and a goal change is possible at any permanency review hearing. *L.T.*, 158 A.3d at 1278.

Accordingly, Mother's claim that she did not receive notice of a possible goal change is baseless and entitles her to no relief.

Next, Mother argues that the trial court erred by changing the permanency goal because the evidence presented was not sufficient. We disagree.

Factors that the trial court must consider at a permanency review hearing are set forth in 42 Pa.C.S. § 6351, as follows:

> **(f) Matters to be determined at permanency hearing**.-- At each permanency hearing, a court shall determine all of the following:
>
> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
>
> (4) The appropriateness and feasibility of the current placement goal for the child.
>
> (5) The likely date by which the placement goal for the child might be achieved.
>
> (5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
>
> (6) Whether the child is safe.
>
> (7) If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

* * *

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

(10) If a sibling of a child has been removed from his home and is in a different placement setting than the child, whether reasonable efforts have been made to place the child and the sibling of the child together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

(11) If the child has a sibling, whether visitation of the child with that sibling is occurring no less than twice a month, unless a finding is made that visitation is contrary to the safety or well-being of the child or sibling.

(12) If the child has been placed with a caregiver, whether the child is being provided with regular, ongoing opportunities to participate in age-appropriate or developmentally appropriate activities. In order to make the determination under this paragraph, the county agency shall document the steps it has taken to ensure that:

(i) the caregiver is following the reasonable and prudent parent standard; and

(ii) the child has regular, ongoing opportunities to engage in age-appropriate or developmentally appropriate activities. The county agency shall consult with the child regarding opportunities to engage in such activities.

**(f.1) Additional determination**.--Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(5) If and when the child will be placed in another planned permanent living arrangement which is approved by the court, the following shall apply:

(i) The child must be 16 years of age or older.

(ii) The county agency shall identify at least one significant connection with a supportive adult willing to be involved in the child's life as the child transitions to adulthood, or document that efforts have been made to identify a supportive adult.

(iii) The county agency shall document:

(A) A compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and willing relative.

(B) Its intensive, ongoing and, as of the date of the hearing, unsuccessful efforts to return the child to the child's parent, guardian or custodian or to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and willing relative.

(C) Its efforts to utilize search technology to find biological family members for the child.

(iv) The court shall:

(A) Ask the child about the desired permanency goal for the child.

(B) Make a judicial determination explaining why, as of the date of the hearing, another planned permanent living arrangement is the best permanency plan for the child.

(C) Provide compelling reasons why it continues not to be in the best interests of the child to return to the child's parent, guardian or custodian, be placed for adoption, be placed with a legal custodian or be placed with a fit and willing relative.

>> (D) Make findings that the significant connection
>> is identified in the permanency plan or that
>> efforts have been made to identify a supportive
>> adult, if no one is currently identified.
>
> **(f.2) Evidence.--**Evidence of conduct by the parent that places
> the health, safety or welfare of the child at risk, including evidence
> of the use of alcohol or a controlled substance that places the
> health, safety or welfare of the child at risk, shall be presented to
> the court by the county agency or any other party at any
> disposition or permanency hearing whether or not the conduct was
> the basis for the determination of dependency.

42 Pa.C.S. § 6351(f)-(f.2).

Additionally, in a change of goal proceeding, the best interests of the children, and not the interests of the parent, must guide the trial court; the parent's rights are secondary. *In re M.T.*, 101 A.3d 1163, 1173 (Pa. Super. 2014). "The burden is on the Agency to prove the change in goal would be in the child's best interests." *Id.* (citation omitted). Finally, the court must consider the bonds a child shares with his parents, foster parents, and siblings. *Id.* (citation omitted). This Court has stated:

> The focus of all dependency proceedings, including change of goal
> proceedings, must be on the safety, permanency, and well-being
> of the child. The best interests of the child take precedence over
> all other considerations, including the conduct and the rights of
> the parent.... While parental progress toward completion of a
> permanency plan is an important factor, it is not to be elevated to
> determinative status, to the exclusion of all other factors.

*Id.* (citation omitted).

In the case at bar, the trial court addressed this issue as follows:

> At the most recent permanency review hearing, Mother's progress
> was again determined to be minimal. The caseworker testified that
> Mother has obtained employment and has been visiting with the

children. While we commend Mother's efforts, we note that as recently as November 22, 2017, the Agency reported that Mother appeared overwhelmed at visits, and that the Foster mother reported that the children were not fed during visits, and that the youngest was returned with urine and feces in her clothing. Recommendation-Status Review, at 1. November 22, 2017. Mother's visits continue to be supervised, and the supervisor stated at the most recent proceeding that Mother continued to need coaching during the visits.

Mother has been ordered to undergo mental health and drug and alcohol evaluations several times, on November 22, 2017, January 29, and May 1, 2018. Mother reports having undergone the evaluations, but no reports or confirmation have been documented to this Court because Mother has failed to execute a release form. We have only the caseworkers statement that Mother does not require services for drug and alcohol issues at the present time. However, without documentation we cannot ascertain with certainty that the evaluations occurred, or what the results were if they did. Hr'g Tr., at 12-13. July 9, 2018.

Similarly, we are without evidence that Mother has obtained appropriate and stable housing. Appropriate and stable housing have been an issue with this family since very near the beginning of the Agency's involvement.

One service provider, Family Engagement Specialist, Jessica Myers testified that there have been "minor safety concerns" during supervised visits, that Mother continues to need coaching, and that [F]oster mother reports disciplinary problems with the children following visits. Id. 19-22. Ms. Myers testified that further behavior modification coaching with Mother is necessary. Foster mother confirmed Ms. Myers' testimony citing a plethora of behavioral issues the children have exhibited. Id. 23-30.

The children have been continuously in placement for roughly eleven months, and while the statutory recommendation of fifteen months is yet to be surpassed, it is fast approaching. While Mother has arguably made minimal progress, the Agency has been involved with this family for twenty-three months. "A child's life simply cannot be put on hold in the hope that the parent will Summon the ability to handle the responsibilities of parenting." In re Adoption of M.E.P., 825 A.2d 1266, 1276 (Pa.Super. 2003). And while the law does not give concrete

deadlines for goals and placement, "The process of reunification or adoption should be *completed-within eighteen (18) months*." In re Adoption of R.J.S., 901 A.2d 502 (Pa.Super 2006) (internal citations omitted) (emphasis in original). Time is of the essence for these children. While we would like nothing more than to see reunification, that can only occur when it becomes the option that best serves the best interests of these children. Thus, it remains the concurrent goal. However, for the reasons stated above, including the length of time the Agency has been involved, it is clear that it is time for another option to become the primary goal. That option is adoption.

Trial Court Opinion, 8/22/18, at 6-8.

After review, we agree with the trial court. The record supports the trial court's conclusions that although Mother made some progress toward reunification with the children, adoption may be in the children's best interests in the immediate future. Accordingly, we discern no error of law or abuse of discretion in the trial court changing the goal from reunification to reunification with a concurrent goal of adoption.

For the reasons set forth above, we conclude that Mother is entitled to no relief in these consolidated appeals. Therefore, we affirm the July 9, 2018 orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: December 31, 2018

- 13 -